# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | |
|---|---|
| LORI J. KING, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 6:13-cv-03384-NKL |
| | ) |
| CAROLYN W. COLVIN | ) |
| ACTING COMMISSIONER | ) |
| OF SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

## ORDER

Pending is Plaintiff Lori King's appeal of the Commissioner of Social Security's final decision denying her application for disability insurance benefits. For the following reasons, the decision of the Administrative Law Judge (ALJ) is remanded in order for the ALJ to accord proper weight to the opinion of King's treating physician and for the ALJ to reconsider his findings regarding King's credibility.

**I.     Background**

King is a forty-nine-year-old woman who suffers from persistent back and hip pain stemming from degenerative disc disease of the lumbar spine, degenerative joint disease of the left shoulder, allergic rhinitis, and morbid obesity.

In May 2012, Dr. Lori Cohen, King's treating physician, diagnosed her with back pain, hypertension, depression, obesity, fatigue, and osteoarthritis. Tr. at 194. In early 2011, King underwent an MRI of her lumbar spine. The MRI showed mild degenerative disc disease, slightly advanced from a previous MRI of her spine taken in 2008. Tr. at

199. Throughout 2011 and 2012, King continued seeking treatment from Dr. Cohen for persistent back pain.

In May 2011, King sought treatment from Dr. Edward Cunningham, a practitioner at the Springfield Neurological & Spine Institute. Tr. at 230. Dr. Cunningham informed King that her MRI did not look bad and she was not a candidate for back surgery. Tr. at 232. She subsequently sought further treatment from Dr. Cohen and Dr. Salim Rahman, another practitioner at the Springfield Neurological & Spine Institute. Additional lumbar MRIs disclosed mild degenerative changes at points along King's spine. Tr. at 235, 237. In July 2011, Dr. Cohen diagnosed King with degenerative disc disease, depression, hypertension, and obesity. Tr. at 245.

On August 1, 2011, Dr. Cohen issued a Mental Medical Source Statement and a Physical Medical Source Statement. Tr. at 220, 225-226. Dr. Cohen indicated moderate limitations in King's ability to concentrate, adapt, and interact socially, and marked limitations in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary norms. *Id.* Dr. Cohen also indicated that King was limited to lifting five pounds occasionally or frequently, could sit for no more than one hour at a time and one hour out of an eight hour work day, and could stand or walk for only fifteen minutes at a time and less than one hour out of an eight hour work day. Tr. at 225. She further noted that King needed to lie down every two to three hours for fifteen to thirty minutes at a time. Tr. at 226.

On August 2, 2011, Dr. Rahman examined King and indicated that he did not recommend surgery for her impairments. Tr. at 239. Beginning on August 11, 2011,

King sought more active treatment for her back pain, including physical therapy and a nerve block. Tr. at 250, 255. In January 2012, King saw Dr. Mark Bult, who diagnosed her with lumbar degenerative disc disease, lumbar radiculitis/radiculopathy in the left lower extremity, and morbid obesity. Tr. at 291. Dr. Bult then administered an epidural steroid injection. *Id.* He administered a second injection in February. Tr. at 282. In April, Dr. Bult performed a nerve branch block. Tr. at 278. Later that month, King again saw Dr. Cohen and reported that treatment had not improved her back pain. Tr. at 274.

On April 13, 2011, King filed an application for disability insurance benefits, alleging disability beginning April 12, 2011. On July 15, 2012, King testified at an administrative hearing in front of ALJ Zane Lang. King stated that she cannot do the vacuuming or dishes due to back pain. Tr. at 36. She also testified that she has to lie down or recline for six to eight hours every day in order to manage her pain. *Id.* King then described the medications she takes for depression. Tr. at 38. Finally, the ALJ questioned Vocational Expert Ronald Hatekeyama regarding King's past employment and her ability to work given her physical restrictions. Tr. at 37-41.

The ALJ found that King was not entitled to receive disability benefits. Tr. at 15-23. The ALJ concluded that she has severe impairments consisting of degenerative disc disease of the lumbar spine, degenerative joint disease of the left shoulder, allergic rhinitis, and morbid obesity. Tr. at 17. However, he found that King's mental impairments do not rise to the level of severe under 20 CFR 404.1520(c). *Id.* The ALJ did not accord substantial weight to Dr. Cohen's statements because he concluded that Dr. Cohen's conclusions were not supported by objective findings. Tr. at 21. King's

testimony was deemed credible with regard to the relationship between her claimed symptoms and impairments, but the ALJ found the extent of her symptoms to be exaggerated.  *Id.*  Due to King's apparent mobility and the opinion of the Vocational Expert, the ALJ found that she is not disabled under sections 216(i) and 223(d) of the Social Security Act.  Tr. at 23.

## II.   Standard

"[R]eview of the Secretary's decision [is limited] to a determination [of] whether the decision is supported by substantial evidence on the record as a whole.  Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion.  [The Court] will not reverse a decision 'simply because some evidence may support the opposite conclusion.'"  *Mitchell v. Shalala*, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted).  Substantial evidence is "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion.  *Gragg v. Astrue*, 615 F.3d 932, 938 (8th Cir. 2010).

## III.  Discussion

King contends that the ALJ's decision to deny her disability benefits is not supported by substantial evidence because (1) the ALJ failed to give proper weight to the opinion of Dr. Cohen, King's treating physician, (2) the ALJ's residual functional capacity (RFC) finding is not supported by substantial evidence of the record, and (3) the ALJ's evaluation of King's credibility is not supported by substantial evidence.  The Court finds that case must be remanded in order for the ALJ to accord proper weight to

4

Dr. Cohen's opinion and for the ALJ to reconsider his conclusions regarding King's credibility and the RFC.

### A. Treating Physician Opinion

King argues that the ALJ failed to accord Dr. Cohen's opinion controlling weight as required for treating physician opinions. King contends that the ALJ's assignment of little weight to Dr. Cohen's opinion is unwarranted in light of the substantial objective medical records that support the doctor's conclusions. The Court agrees that the ALJ's decision to afford Dr. Cohen's opinion little weight is not supported by substantial evidence in the record.

A treating source's opinion must be given controlling weight if it is well-supported by medically acceptable diagnostic techniques and is not inconsistent with the other substantial evidence in the record. SSR 96-2p, 1996 WL 374188 (July 2, 1996); *see also Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005). Even when it is inappropriate to accord the treating physician's opinion controlling weight in light of the record, the opinions "should not ordinarily be disregarded and [are] entitled to substantial weight." *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000). If the ALJ decides to discount a treating physician's opinion, he should "give good reasons" for his decision. *Dolph v. Barnhart*, 308 F.3d 876, 878 (8th Cir. 2002).

The record does not support the ALJ's decision to accord Dr. Cohen's conclusions little weight. Dr. Cohen treated King for three years, during which time Dr. Cohen made clinical findings, ordered objective testing of King's condition including x-rays and

MRIs, and documented King's progress. Almost every visit King made to Dr. Cohen concerned her lower back pain. Doc. 10, p. 12.

Based on King's visits and the results of her tests, Dr. Cohen concluded that King could lift five pounds occasionally and five pounds frequently; could sit for one hour at a time and one hour out of an eight-hour work day; could stand or walk for fifteen minutes at a time and less than one hour out of an eight-hour work day; could never climb, balance, stoop, kneel, crouch, or crawl and could occasionally handle, finger, and feel. Dr. Cohen also stated that King needed to avoid moderate cold, heat, and dust and all weather, wetness, vibration, and work hazards. She finally noted that King needed to lie down every two to three hours for fifteen to thirty minutes at a time.

The ALJ stated that he accorded Dr. Cohen's opinion little weight "because there are little if any objective findings concerning the claimant's degenerative disc disease of the lumbar spine." Tr. at 21. However, King's medical records contain significant objective evidence of degenerative disc disease; these records comport with Dr. Cohen's conclusions regarding King's capabilities.[1] The record contains the results of multiple MRIs from 2011 showing "mild disc space narrowing at L3-4 and L4-5, and left paracentral disc protrusion at L4-5 resulting in mild left neural foraminal and lateral recess narrowing," as well as "mild lateral recess stenosis at L4-5 on the left secondary to

---

[1] Defendant argues that Dr. Cohen's opinions are not entitled to substantial weight because they are on "checkbox forms" that provide "little elaboration or supporting references." However, the ALJ is not entitled to discount Dr. Cohen's opinion simply because it is on a check-list form. *Reed v. Barnhart*, 399 F.3d 917, 921 (8th Cir. 2005). King's medical records from Dr. Cohen provide a plethora of information that supports the doctor's conclusions and her markings on the check-list form.

6

a broad-based disc protrusion and mild degenerative changes involving the facet joints." Tr. at 20. King also had an x-ray in April 2012 that showed "mild diffuses spondylosis of the dorsal spine" and "moderate left facet hypertrophy and osteoarthritis." *Id.* A number of doctors also noted that King had tenderness and pain over the lumbar spine, positive straight leg raises, and limited range of motion in the lumbar spine.

These records, from both Dr. Cohen and other treating physicians, support Dr. Cohen's conclusion that King is significantly limited in her ability to function, particularly in the work setting. King received significant treatment for her pain, including nerve blocks and steroid injections. The ALJ gave no reasons for his disregard of King's medical and treatment history in deciding not to adopt Dr. Cohen's opinions. Dr. Cohen's treated King fifteen times over the course of three years. As such, she had significant knowledge of King's condition when she rendered her opinion of King's disabilities. The record does not support the ALJ's decision to accord Dr. Cohen's opinion little weight. The case is remanded for the ALJ to either give controlling weight to Dr. Cohen's opinion or explain why controlling weight is not given.

### B. Evidence of King's Credibility

King argues that the ALJ erred in failing to consider evidence related to her work record, daily activities, and pain restrictions in evaluating her credibility. The Court finds that the ALJ's disregard for King's testimony is not supported by substantial evidence.

In *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984), the Eighth Circuit set out five factors that the ALJ must consider in evaluating a claimant's subjective complaints of pain. These are: "(1) the claimant's daily activities; (2) the duration,

7

frequency and intensity of pain; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions." *Eichelberger v. Barnhart*, 390 F.3d 584, 590 (8th Cir. 2004) (citing *Polaski*, 739 F.2d at 1322). The ALJ must also consider the objective medical evidence and the claimant's work history. *Polaski*, 739 F.2d at 1322. "The ALJ must make express credibility determinations" in light of these considerations, and if the ALJ decides not to accord weight to the claimant's testimony he must "set forth the inconsistencies in the record which cause him to reject the plaintiff's complaints." *Id.*

At the administrative hearing King testified that she can only walk fifty to one hundred feet at a time and cannot stand, sit or lie down for long periods of time. She also stated that she spends six to eight hours per day, not including sleep, reclining, due to persistent back pain. Tr. at 36. The ALJ concluded that King's "impairments could reasonably be expected to cause the alleged symptoms," but found that the extent of the symptoms King claimed was not credible due to the lack of objective medical evidence in her file. Tr. at 21.

The ALJ's conclusion is not supported by the evidence of the record. As discussed above, the record contains substantial evidence of King's degenerative disc disease. King also underwent substantial treatment for her pain including a nerve branch block, epidural steroid injections, ten weeks of physical therapy, and implantation of a TENS unit. Tr. at 274. She told Dr. Cohen that none of these treatments were effective and she continued to experience significant back pain that impaired her mobility.

The ALJ also failed to discuss King's substantial work history in rejecting her testimony. But for a three year period in the 1990s, King maintained substantial gainful employment from 1986 until her disability onset date in April 2011, making anywhere from thirteen to thirty thousand dollars per year. Though "[a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered," the ALJ should have discussed King's work history in this case given the substantial evidence of King's disability on the record. *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998). King's extensive work history suggests that she would work if able.

The ALJ also discredited King's testimony because the record reflected that her daily activities include cooking, doing laundry, driving, and grocery shopping. Tr. at 165-166. The ALJ noted that these activities "are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." Tr. at 21. However, it is not readily apparent from the record why King's complaints are inconsistent with her daily activities. In her testimony at the administrative hearing, King complained of difficulties completing many of these activities. Though she is able to engage in activities including cooking and cleaning for a short period of time each day, these activities do not necessarily require King to stand or sit for a prolonged time or walk for more than one hundred feet. On remand, the ALJ should reconsider King's credibility, particularly in light of the reevaluation of Dr. Cohen's opinion. Because the RFC is impacted by both these issues, it should be reconsidered as well.

9

## IV. Conclusion

For the reasons set forth above, the matter is remanded. On remand, the ALJ is ordered to give controlling weight to Dr. Cohen's opinions, or provide evidentiary support, not mere conclusions, for failing to do so. The ALJ is also ordered to discuss why, given King's work history, her testimony is not entitled to greater weight than previously given. The ALJ shall further address why King's activities of daily living are evidence that she can still work full time.

s/ Nanette K. Laughrey  
NANETTE K. LAUGHREY  
United States District Judge

Dated: October 20, 2014  
Jefferson City, Missouri